IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTINE MOORE,

                        Plaintiff,                          OPINION AND ORDER

        v.                                                   17-cv-698-wmc

ROBERT LEE and ANDRE JOHNSON,
in their individual capacities,

                        Defendants.

In this civil lawsuit brought under 42 U.S.C. § 1983, plaintiff Christine Moore alleges that her former supervisors at the Dane County Department of Human Services, defendants Robert Lee and Andre Johnson, retaliated against her for complaining to the Dane County Board and County Executive about staffing shortages. This is the second lawsuit Moore has pursued in this court. In the first, Moore asserted that Dane County Director of Human Services Lynn Green had retaliated against her for the same reason. *Moore v. Green*, No. 16-cv-690-wmc (W.D. Wis. filed Oct. 18, 2016). During the course of discovery in that case, however, Moore claims she learned for the first time that defendants Lee and Johnson committed the alleged retaliatory act, not Green. Thus, Moore dismissed her claim against Green and filed this new lawsuit.

Before the court is defendants' motion for judgment on the pleadings under Federal Rule of Procedure 12(c) (dkt. #16), to which they attach as support deposition transcripts from plaintiff's first lawsuit against Green. Given that none of these transcripts are referenced or incorporated in plaintiff's complaint, defendants' motion is a blatant attempt to end run the requirements of Federal Rule of Civil Procedure 56. However understandable this ham-handed effort may be, the court will deny defendants' motion as

premature for the reasons that follow, but without prejudice to them pursuing the same or similar arguments in their motion for summary judgment.

## ALLEGATIONS OF FACT

Christine Moore began her employment with Dane County in 1993. In 2011, she attained the position of Senior Social Worker, working within the County's Department of Human Services. At all times relevant to this complaint, defendant Robert Lee was employed by Dane County Division Administrator for the Children, Youth & Family Division; and defendant Andre Johnson was employed by Dane County as the Juvenile Justice Administrator.

In late 2013, more than 20 years after she started working for Dane County, Moore chose to speak "at a public forum about staffing shortages in the Department of Human Services." (Compl. (dkt. #1) ¶ 9.) She did so at the Dane County Board forum, and she also emailed the Dane County Supervisors individually. As the Director of the Department of Human Services, defendant Lynn Green was present at the forum, and so was defendant Lee, as the Division Administrator responsible for staffing. Specifically, plaintiff alleges that her "speech" at the forum had "the potential to make Lee look bad in the eyes of his supervisor, Green, [as well as] the County Executive and Dane County Board." (*Id.* at ¶ 11.)

After a series of medical leaves that began in early 2014, Dane County eventually terminated Moore's employment on February 14, 2015, although she does not allege that the termination was retaliatory. Moore was later hired by Soport, Inc., a private social services and welfare organization. Shortly after Moore began working at Soport, however,

she alleges that defendants "Lee and Johnson decided to speak to Moore's supervisor at Soport to demand her termination from his company." (*Id.* at ¶ 14.) Plaintiff further alleges that defendant "Johnson then met with Moore's supervisor at Soport and demanded her termination, without explanation." (*Id.* at ¶ 15.) Next, "[o]n November 10, 2015, Wayne Houston, Executive Director of Soport, wrote to Moore, . . . explain[ing] that Lynn Green (via Johnson) ordered him to terminate Moore if Houston wished for Soport to continue to contract with Dane County." (*Id.* at ¶ 16.) Plaintiff specifically alleges that "Lee and / or Johnson ordered Houston to terminate Moore because of [her] protected speech." (*Id.* at ¶ 17.) Finally, since her termination, plaintiff alleges that "she has been unable to find work in her chosen field." (*Id.* at ¶ 19.)

## OPINION

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as Rule 12(b)(6), except that the court considers not only the complaint and referenced documents, but all pleadings, as well as documents that are incorporated into any pleading by reference. *See Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) ("motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)"); *Buchanan-Moore v. City of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (same). To succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved," despite viewing all facts in the light most favorable to the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). In particular, the non-moving party's factual allegations are generally accepted as true in response to a 12(c) motion, although "allegations in the form

of legal conclusions are insufficient to survive." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)).

As described in the introduction above, defendants attached a number of deposition transcripts to their motion and purport to rely heavily on those transcripts in seeking judgment in their favor. While Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," defendants cite no authority that such an "instrument" extends to deposition transcripts from an earlier lawsuit. Perhaps if a deposition contained a clear statement by plaintiff in direct contradiction to an allegation in her complaint, the court could consider it in a motion for judgment on the pleadings, or at least would under Rule 12(d), but defendants fail to identify such a statement. Instead, defendants' account of the "facts" largely invites a determination of whether plaintiff can prove her claims, which is *not* the standard applied at the pleading stage. Nonetheless, the court will consider defendants' arguments under the appropriate 12(c) standard, viewing plaintiff's allegations and claim for relief in the light most favorable to her, while drawing all reasonable inferences in her favor.

Here, Moore asserts two claims against defendants, both in their individual capacities, for violation of her First Amendment rights by compelling Soport to terminate her, and violation of her Fourteenth Amendment rights by precluding her from working in the profession of her choice. The court will consider defendants' bases for judgment in their favor in light of these two claims, beginning with the fundamental question as to whether her alleged conduct amounted to protected speech, then whether plaintiff has

alleged sufficient facts to hold defendants Lee and Johnson causally liable, and finally whether defendants are entitled to qualified immunity.

## I. Protected Speech

Defendants contend that plaintiff's retaliation claim fails because "contrary to her generalized and conclusory allegations about communicating with the County Board on matters of public concern, the pleadings reveal that Ms. Moore's communications regarding supposed staffing shortage in her former Dane County department were part of a coordinated plan with her then-coworkers to obtain additional help to lessen their workloads." (Defs.' Br. (dkt. #17) 12.) As a public employee, this distinction may be critical because to be protected, Moore must have spoken "as a citizen on a matter of public concern." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 861-62 (7th Cir. 2010) (quoting *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009)). "When employees make statements 'pursuant to their official duties,' they are not speaking 'as citizens' for First Amendment purposes." *Swearnigen-El*, 602 F.3d at 862 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

As described above, plaintiff claims that she complained about staffing shortages to the Board and County Executive as a private citizen. Defendants argue, however, that these allegations -- and unfortunately for purposes of their pending motion, deposition testimony -- foreclose a finding that she was speaking as a private citizen because she was effectively complaining about *her* workload and that of her fellow employees. In support, defendants direct the court to three cases. (Defs.' Br. (dkt. #17) 15.) However, each stand for the proposition that "[w]hen employee expression cannot be fairly considered as

relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers*, 461 U.S. 138, 146 (1983); *see also Carreon v. Ill. Dep't of Human Servs.*, 395 F.3d 786, 791 (7th Cir. 2005) (concluding at summary judgment that the plaintiff employee's complaints about being transferred was not speech as a private citizen on a matter of public concern); *Klug v. Chi. Sch. Reform Bd. of Trustees*, 197 F.3d 853, 858 (7th Cir. 1999) (affirming grant of motion to dismiss where complaint failed to give rise to a reasonable inference that complaint about "office politics" was of a matter of public concern).

In contrast, Moore alleges that she spoke about staffing shortages at the County's Department of Human Services that related to a matter of substantial public concern -- the County's ability to address children and family needs. *See Trejo v. Shoben*, 319 F.3d 878, 885 (7th Cir. 2003) ("In cases like the one before us, where the employer brings a motion to dismiss the employee's free speech claim on the basis of the pleadings, rather than on the facts in the record, the speech may be presumed to involve a matter of 'public concern' if it touches upon 'any matter for which there is potentially a public' interest.") (quoting *Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir. 1994)). Perhaps plaintiff's claim will fail on the merits, but drawing all reasonable inferences in plaintiff's favor on the pleadings, the court concludes that plaintiff has sufficiently alleged that she was speaking as a private citizen on a matter relating to public concern, even if the court considered her deposition testimony providing more detail about the content of her speech. *See Moore v. Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989) (reversing district court and holding that speech about understaffing of fire department was as a private citizen on a matter of

public concern).[1]

## II. Causation

Alternatively, defendants argue that plaintiff cannot satisfy the causation requirement because of a lack of temporal proximity between her speech in late 2013 and the alleged retaliatory act in November 2015. Here, too, defendants erroneously focus on what evidence plaintiff must produce to prove her claim, rather than what she alleges. (Defs.' Br. (dkt. #17) 17 ("To establish a First Amendment retaliation claim, Ms. Moore must initially produce evidence which demonstrates that her constitutionally-protected speech was a substantial or motivating factor in Defendants' actions against her.").) Moreover, defendants again fail to direct the court to any cases holding that temporal proximity is a *requirement* of proving causation in a retaliation claim. Instead, the cases cited by defendants simply hold that *absent other evidence*, a gap between the alleged protected conduct and the retaliatory act could doom the finding of a causal link.

Here, however, plaintiff alleges that defendants' motivation in telling her new employer to terminate her employment was her past, protected speech. Of course, there may well be strong evidence of intervening causes (particularly her subsequent lawful termination), but plaintiff at least alleges that she has evidence to support her causation claim. As plaintiff also point out in her opposition brief, the two-year gap is a bit of a red herring in light of her allegations that: (1) she was not working for a good portion of this

---

[1] Indeed, this is largely an issue of law for the court to determine. *See McArdle v. Peoria School Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013) ("The inquiry into the protected status of speech is one of law, not fact.") (citing *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007)). Appropriately enough, defendants raised this issue as part of their favor in their recently-filed motion for summary judgment. (Defs.' Opening Br. (dkt. #41) 18-22.)

time due to a medical leave, thus precluding defendants from retaliating; and (2) her employment by Soport was terminated soon after her hiring, thus supporting an inference that defendant retaliated as soon as the opportunity presented itself. In short, plaintiff's allegations do not foreclose a finding that her speech was a motivating factor in defendants' causing Soport to terminate her employment.

Defendants also argue that plaintiff's claims fail because she does not adequately allege that they were *personally* involved in the termination. To the contrary, plaintiff alleges that Lee and Johnson decided to speak with Moore's supervisor at Soport, Wayne Houston, to demand that he terminate Moore, and Johnson proceeded to meet with Houston and made that demand in person. (Compl. (dkt. #1) ¶¶ 14-15.) These allegations are more than sufficient to infer that both defendants Lee and Johnson were personally involved in causing her termination. To be fair to defendants, plaintiff also alleges that following her termination, Houston wrote to Moore and explained that "Lynn Green (via Johnson) ordered him to terminate Moore if Houston wished for Soport to continue to contract with Dane County." (*Id.* at ¶ 16.) Perhaps this allegation also implicates Green, but it does not undermine plaintiff's allegation that Lee and Johnson personally participated in her termination. As such, the court rejects this challenge on the pleadings as well.

Defendants next seek judgment in their favor on the basis that "the pleadings set forth a legitimate non-retaliatory explanation for the steps taken by Messrs. Lee and Johnson," precluding a finding that plaintiff's protected speech caused her termination. (Defs.' Br. (dkt. #17) 21.) In support of this argument, defendants largely rely on the

deposition testimony of Lee, Johnson and Green, which again goes well beyond the scope of the pleadings and into the sufficiency of plaintiff's evidence. If anything, this evidence goes to a possible defense that defendants would have ordered Soport to terminate even if she had *not* engaged in protected conduct, but that defense is not something plaintiff's pleading had to anticipate, much less refute, at the pleading stage. As a result, nothing more need be said about this defense, other than to note that defendants remain free to renew it in a motion for summary judgment, which they now appear to have done.

Defendants raise one last causation related argument with respect to her Fourteenth Amendment claim, arguing that because Moore's employment with Soport was at-will, she has no constitutionally-protected right to remain in its employ. As plaintiff points out in her opposition brief, however, an employee has a liberty interest in being able to pursue the occupation of her choice. Moreover, that interest is infringed "if the circumstances of the discharge, at least if they were publicly stated, had the effect of blacklisting the employee from employment in comparable jobs." *Trejo v. Shoben*, 319 F.3d 878, 889 (7th Cir. 2003) (internal citation and quotation marks omitted). Here, plaintiff alleges just that with respect to obtaining employment in her chosen field following defendants allegedly directing her termination. While plaintiff faces a heavy burden of proving with admissible evidence that defendants have blocked *all* employment in her chosen field, these allegations are sufficient to satisfy the pleading requirement.

### III. Qualified Immunity Doctrine

Finally, defendants seek dismissal on the basis of qualified immunity, a doctrine which protects government employees from liability for civil damages for actions taken within the scope of their employment unless their conduct violates "clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "In determining whether a constitutional right has been clearly established, it is unnecessary for the particular violation in question to have been previously held unlawful." *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Instead, the question is whether the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

At the time of the alleged retaliatory acts here, and indeed, well before then, it was already well established in case law that a private citizen speaking of a matter of public concern was engaged in protected First Amendment activity, and, therefore, could not be retaliated against by a government actor because of that speech. *See Gustafson v. Jones*, 117 F.3d 1015, 1021 (7th Cir. 1997) ("It has been well established for many years in this Circuit that a public employer may not retaliate against an employee who exercises his First Amendment speech rights."). Moreover, it was also clearly established that a government actor may not ban someone from the occupation of their choice without violating the person's Fourteenth Amendment rights. *See Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987) ("If a state or the federal government formally banned a person from a whole category of employment, it would be infringing liberty of occupation -- a component of the

liberty that the due process clauses of the Fifth and Fourteenth Amendment protect, and recognized as such almost since the beginning of this nation.").

In response to plaintiff's argument, defendants argue in their reply brief that "given the duties of their respective positions within the Department of Human Services, both Messrs. Lee and Johnson were exactly the type of public officials who should be shielded from Section 1983 liability by the doctrine of qualified immunity." (Defs.' Reply (dkt. #30) 9.) However, defendants appear to be conflating the standard for immunity for discretionary functions under state law, *see* Wis. Stat. § 893.80(4), with the test for qualified immunity from suit under § 1983. Regardless, taking plaintiff's allegations as true, defendants offer no meaningful response to the straightforward case law holding otherwise and identified by plaintiff. Accordingly, the court rejects this basis for judgment on the pleadings as well, although without prejudice to defendants renewing this argument on undisputed facts in their summary judgment brief.

ORDER

IT IS ORDERED that defendants Andre Johnson and Robert Lee's motion for judgment on the pleadings (dkt. #16) is DENIED.

Entered this 3rd day of December, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge